IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

IN RE PHIL STEINLE, JR.,
Owner of a 41' Formula, Hull, etc.,

Case No. 3:08 CV 2934

MEMORANDUM OPINION

KATZ, J.

This matter derives from the June 15, 2008 collision between two recreational vessels in Sandusky Bay, Lake Erie. The collision, which occurred between the forty-one foot M/V Secret Formula ("the Secret Formula"), and the smaller, twenty-foot Sea Ray vessel, ("the Sea Ray"), resulted in the death of one passenger and personal injuries to others. In the aftermath of the collision, six separate lawsuits were filed, all of which were consolidated under the above-captioned matter. Included among the consolidated cases are the two actions *sub judice*: *Miller v. United States*, No. 10-cv-788, and *Franklin v. United States*, No. 10-cv-1199.

Currently pending before the Court is Defendants United States' and United States Coast Guard's (collectively, "the Government") FED. R. CIV. P. 12(b)(1) motion to dismiss the *Miller* Complaint and the *Franklin* Complaint for lack of subject matter jurisdiction. (Doc. 89). Also pending is the Government's FED. R. CIV. P. 12(f) motion to strike Plaintiff Ashley Franklin's Supplemental Authority List, (Doc. 162), Plaintiff Ashley Franklin's request to file a revised Supplemental Authority List, (Doc. 163), and Plaintiffs' requests for oral argument. (Doc. 159; Doc. 160).

For the reasons stated herein, the Government's motion to dismiss is granted, the Government's motion to strike is granted, Plaintiff Ashley Franklin's request for leave to file a

revised Supplemental Authority List is denied, and Plaintiffs' requests for oral argument are denied.[1]

**I. Background**

On the night of June 14, 2008, Coast Guard Petty Officers Nicholas Hupp, Eric Heyob, and Gregory Penny were on board the Coast Guard patrol Boat CG 25725 in Sandusky Bay. The boat was under the command of Hupp, the coxswain, and was crewed by Hyeob and Penny.

Shortly before midnight, the crew observed the Secret Formula exiting Sandusky Bay's Neuman Dock area without displaying all of the nighttime navigation lights that are mandatory under the Coast Guard's Inland Navigation Rules ("Inland Navigation Rules," or "Rules"). While the Secret Formula displayed red and green side lights, it did not display the required 225-degree forward-facing white masthead light, or the 135-degree rear-facing white stern light. Consequently, the Coast Guard crew ordered the Secret Formula back to the dock for inspection. Petty Officer Heyob–a recently credentialed Boarding Officer–assumed the Boarding Officer role and led the inspection. Penny assisted Heyob as a boarding team member, and Hupp remained on the Coast Guard vessel and took no part in the inspection.

Upon boarding the Secret Formula, Heyob and Penny confirmed that neither the masthead nor the stern lights were illuminated. Heyob, in his role as Boarding Officer, informed the Secret Formula's owner, Phil Steinle, that he must find a replacement light or terminate his trip. Steinle then produced a battery powered, 360-degree "all-round" type white masthead light that was

---

[1] The Government filed Third Party Complaints for contribution and tender in each of the two cases currently at issue. (*See* Doc. 11, *Miller v. United States*, No. 10-cv-788; Doc. 7, *Franklin v. United States*, No. 10-cv-1199). Thus, while the original Complaints in *Miller v. United States* and *Franklin v. United States* are dismissed, the Government's Third Party Complaints remain pending in both actions.

mounted on a two-to-three foot pole. Steinle also informed Heyob that he planned only to make the short trip back to the Venetian Marina, located approximately 2.25 miles away.

In determining how to handle the situation described above, Heyob testified that he drew on his Boarding Officer training, his knowledge of the Inland Navigation Rules, and on guidance provided by the Coast Guard's Boarding Officer Job Aid Kit ("BOJAK") manual. (Doc. 89-2). Notably, for a vessel of the Secret Formula's length, (approximately 41 feet), Inland Navigation Rule 23 requires a forward-facing 225-degree masthead light, and a rear-facing 135-degree stern light. The Rules do not provide for a 360-degree "all-round" type light. Despite this, Heyob concluded that the 360-degree light would be a sufficient temporary correction so long as Steinle displayed the light and headed directly to the Venetian Marina. Heyob informed Steinle of these instructions, and Steinle responded that he did not have any questions. Heyob then provided Steinle with the appropriate paperwork indicating the required corrective actions, ended the inspection, and returned with Penny to the Coast Guard boat shortly after midnight. None of the Coast Guardsmen took any further action to verify that Steinle complied with Heyob's instructions.

The Secret Formula subsequently departed the Neuman Dock area. While en route to the Venetian Marina it collided with Kevin Lake's Sea Ray. Plaintiff Ashley Franklin, a passenger on the Sea Ray, sustained serious injuries as a result of the collision. Benjamin Miller, also a passenger on the Sea Ray, was thrown overboard and died.

On April 15, 2010, decedent Benjamin Miller's parents sued the Government for negligence pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901 *et seq*. ("SAA"). *See* No. 10-cv-788. On May 27, 2010, Ashley Franklin filed a substantially identical Complaint, *see* No.

10-cv-1199,[2] and Plaintiffs' actions were consolidated with several other lawsuits into the instant matter. The Government filed a FED. R. CIV. P. 12(b)(1) motion to dismiss the Millers' Complaint and Franklin's Complaint for lack of subject matter jurisdiction on April 4, 2011.

**II. Standard of Review: FED. R. CIV. P. 12(b)(1) Motion to Dismiss**

Generally, a FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) *cert. denied*, 513 U.S. 868 (1994); *see also Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F.Supp. 2d 931, 934 (N.D. Ohio 2005). A facial attack challenges the sufficiency of the pleading itself, and requires the Court to take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio 1997), and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Both the Plaintiffs and the Government agree that the instant motion to dismiss involves a factual attack.

When assessing a factual attack on subject matter jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction, *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78

---

[2] Both Complaints also state an intention to file administrative cases with the Coast Guard pursuant to the Federal Tort Claims Act ("FTCA"). (Doc. 1 at ¶4, No. 10-cv-788; Doc. 1 at ¶4, No. 10-cv-1199). Plaintiffs intend to file such cases "as a result of conflicting court decisions as to whether plaintiffs' remedy is under the [FTCA] or the [SAA]." *Id*.

4

F.3d 1125, 1134 (6th Cir. 1986), and "no presumptive truthfulness applies to the factual allegations . . . ." *Ritchie*, 15 F.3d at 598 (internal citations omitted). Instead, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.; *see also RMI Titanium*, 78 F.3d at 1135. Moreover, "a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has a wide discretion to consider affidavits and the documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *Shalala,* 978 F.Supp. at 739 (relying on *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)); *see also Kroll v. United States,* 58 F.3d 1087, 1090 (6th Cir. 1995) ("The Court may examine evidence of its power to hear a case, and must make any factual findings to determine whether it has jurisdiction.").

Despite their agreement that the Government's 12(b)(1) motion to dismiss involves a factual attack on subject matter jurisdiction, Plaintiffs' briefs argue that the appropriate standard of review is not as described above. Instead, Plaintiffs argue the appropriate standard of review is that of summary judgment. (*See* Doc. 151 at 12; Doc. 152 at 7-8). Plaintiffs draw on three non-binding cases from outside the Sixth Circuit to advance this proposition. Plaintiffs also cite a Western District of Michigan case that is likewise non-binding, and that applies the summary judgment standard in an apparent mis-interpretation of the Sixth Circuit's *Ohio National* decision. *See Gillett v. United States*, 233 F. Supp. 2d 874, 877 (W.D. Mich. 2002) (citing *Ohio Nat'l*, 922 F.2d at 324) (applying summary judgment standard to 12(b)(1) factual attack). Contrary to the *Gillett* Court's conclusions, *Ohio National* discusses summary judgment only for purposes of distinguishing its *res judicata* effects from those of a 12(b)(1) factual attack on subject matter jurisdiction. *See id.* at 324-25 (confining preclusive effect of 12(b)(1) factual determinations to

5

issues of jurisdiction, while extending preclusive effect of summary judgment factual determinations to the merits).

Plaintiffs also advocate for application of the summary judgment standard by citing a footnote in *Ritchie*, *supra*. The *Ritchie* footnote states that the Sixth Circuit distinguishes 12(b)(1) factual attacks from situations "in which the jurisdictional issue is so factually intertwined with the merits of the action as to require a ruling on the merits with a ruling on the jurisdictional issue. These are different situations requiring a different analysis." 15 F.3d at 598 n.5. Plaintiff's invocation of the *Ritchie* footnote is unavailing, as they fail to discern when the existence of such an entanglement compels courts to assume jurisdiction and apply the summary judgment standard. The Sixth Circuit's ruling in *Gentek Bldg. Prods.*, *supra*, provides guidance on the issue. The *Gentek* Court explained that when a factual inquiry into subject matter jurisdiction is so entangled with the merits of a case that the inquiry "***implicates an element of the [palintiff's] cause of action*** . . . 'the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place greater restrictions on the district court's discretion . . . .'" *Id.* (emphasis added) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 443-44 (6th Cir. 2006). Such is not the case here. Plaintiffs' cause of action is one for negligence, while the jurisdictional question derives from the discretionary function exception to the Government's waiver of sovereign immunity. As further explained below, an inquiry into the discretionary function exception turns on whether the Coast Guard was authorized to—and did—exercise discretion in its handling of the Secret Formula's lighting violations, *regardless of whether the Coast Guard was negligent in exercising that discretion*. Thus, the jurisdictional issues emanating from the discretionary function exception are not so intertwined with the elements of Plaintiffs' negligence action that this Court must assume

6

jurisdiction and apply a summary judgment-based standard of review. *See id.* To the contrary, the appropriate standard of review remains that of a 12(b)(1) factual attack on the existence of subject matter jurisdiction.

## III. Discretionary Function Exception

The SAA has waived the United States Government's sovereign immunity from suit. *Graves v. United States*, 872 F.2d 133, 137 (6th Cir. 1989). Despite this waiver, 28 U.S.C. § 2680(a) creates a "discretionary function exception," whereby discretionary acts of government officials are excepted from the SAA's waiver of immunity. As a result, the Government remains immune from suit for SAA claims where the alleged negligence occurred during discretionary acts, and district courts are necessarily deprived of subject matter jurisdiction in such cases. *Graves*, 872 F.2d at 137 (citing *Myslakowski v. United States*, 806 F.2d 94, 96 (6th Cir. 1986)).

"In a series of cases," culminating with *United States v. Gaubert*, 499 U.S. 315 (1991), "the Supreme Court has articulated and refined a two-part test to be applied in determining whether a particular claim falls under this discretionary function exception to the waiver of sovereign immunity." *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997) (citing *Gaubert*, *supra*; *Berkovitz by Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984); *Dalehite v. United States*, 346 U.S. 15 (1953)).

The first part of the test requires determination of whether the challenged conduct "involve[s] a true discretionary choice, not one prescribed by statute or regulation . . . ." *Lawson v. United States*, 1997 U.S. App. LEXIS 23227, at *6 (6th Cir. Aug. 27, 1997) (citing *Gaubert*, 499 U.S. at 326)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because

7

'the employee has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536).

"If the challenged conduct is determined to be discretionary, the second part of the *Gaubert* test looks to see whether the conduct is 'of the kind that the discretionary function exception was designed to shield.'" *Rosebush*, 119 F.3d at 441 (quoting *Gaubert*, 499 U.S. at 322-23). As explained by the Supreme Court in *Vairg Airlines*, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . ." 467 U.S. at 814. Thus, the second part of the discretionary function test is satisfied if the challenged conduct "touches on public policy considerations." *Lawson*, 1997 U.S. App. LEXIS 23227, at *7 (citing *Gaubert*, 499 U.S. at 326). In making this determination, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Moreover, the very existence of a regulation that allows for discretion "creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id*. at 324 ("it must be presumed that the agent's acts are grounded in policy when exercising that discretion.").

**IV. Discussion**

In order to determine which of the parties' briefs are appropriately considered by the Court, this Memorandum first addresses the Government's motion to strike. Upon doing so, the Memorandum examines whether the discretionary function exception deprives this Court of subject matter jurisdiction.

**A. Government's Motion to Strike Plaintiff Ashley Franklin's Supplemental Authority List**

Approximately one week after the Government replied to Plaintiffs' memoranda in opposition to its motion to dismiss, Plaintiff Ashley Franklin filed a ten page document titled "Supplemental Authority." (Doc. 161). The document is an amalgamation of bullet-listed federal statutes and regulations, coupled with intermittent paragraphs of legal analysis, all of which is organized under argumentative subject headings in an outline format. The Government answered Franklin's filing with a motion to strike it from the record, arguing that the document amounts to an impermissible surreply brief. Franklin responded that the document was "intended solely to bring to the Court's attention [to] authority discovered after the filing of [Franklin's opposition memorandum]." (Doc. 163). Moreover, in the event the Court strikes the document, Franklin requests leave to file the supplemental authority list without any accompanying analysis.

This Court construes Franklin's filing as a surreply brief and accordingly strikes it from the record. Neither the Federal Rules of Civil Procedure, nor the the Northern District of Ohio's Local Rules, provide for a surreply brief as a matter of course. *See* N.D. Ohio Civ. R. 7.1; *Uszak v. Yellow Transp., Inc.*, 2007 U.S. Dist. LEXIS 43663, at *3 (N.D. Ohio June 15, 2007) (Boyko, J.). Moreover, Franklin does not show good cause as to why she failed to include the cited authority in her response to the Government's motion to dismiss, or as to why it is proper for this Court to accept a document that was designed as a vehicle to proffer arguments she now concedes should be withdrawn. Franklin's supplemental authority filing is not well taken, and the Government's motion to strike it from the record is granted. Franklin's request to file a revised version of the document is denied.

**B. Discretionary Function Exception**

Having determined which of the parties' briefs are appropriately before the Court, we now turn to the issue of whether the discretionary function exception deprives this Court of subject matter jurisdiction.

**1. First Prong: Whether the Coast Guard's Actions were Discretionary**

Under the first prong of the *Gaubert* analysis, the Court must determine whether the relevant statutes, regulations, and policies prescribed a mandatory course of conduct for the Coast Guard's encounter with the Secret Formula, or whether the Coast Guard was free to exercise a truly discretionary choice. *Gaubert*, 499 U.S. at 322. The parties vehemently dispute which statutes, regulations, and policies are relevant to the instant matter, and likewise dispute whether any discretion flows therefrom. Because this matter involves the Coast Guard's enforcement of the Inland Navigation Rules, the Government argues that the BOJAK manual, as well as a series of statutes and regulations designed to guide Coast Guard enforcement activities, control the issue. The Government further argues that these guidelines provide for discretion in how the Coast Guard conducts enforcement, while placing the onus of compliance on the vessel's operator. Conversely, Plaintiffs argue that the Inland Navigation Rules themselves control the issue since the Coast Guard boarded the Secret Formula to enforce them.[3] Moreover, Plaintiffs emphasize the mandatory nature of the Rules and thus argue that the Coast Guard had no discretion and was

---

[3] Plaintiffs cite a number of mandatory provisions in Inland Navigation Rules 20-23, including requirements that a vessel of the Secret Formula's length display a 225-degree front-facing white masthead light and a 135-degree rear-facing white stern light, requirements regarding the distance at which such lights are visible, and requirements regarding the proper placement of lights so that they do not interfere with a proper lookout. Plaintiffs also cite mandatory provisions in Rules 5-6 that require a vessel to maintain a safe speed and a proper lookout at all times.

required to ensure strict compliance. To the extent Plaintiffs acknowledge the enforcement guidelines proffered by the Government, Plaintiffs argue they do not provide for discretion.

The instant dispute as to the relevant authorities is analogous to the arguments addressed by the Supreme Court in *Varig Airlines*, *supra*. In that case, several passenger aircraft were involved in fatal crashes after being inspected for safety compliance by the Federal Aviation Administration ("FAA"). Plaintiff aircraft owners sued the United States, alleging that the FAA was negligent in its decision to implement a spot-check system for compliance, and was also negligent in its application of the spot-check system. 467 U.S. at 819. In applying the discretionary function exception, the Supreme Court held that while statutes and regulations charged the FAA with enforcing mandatory safety standards, a proper discretionary function inquiry examines the authorities designed to guide the FAA's conduct in enforcing those standards. *See Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 513 (7th Cir. 1995) (explaining *Varig Airlines* held that it is "the judgmental nature of the inspection procedure, not the mandatory nature of the regulations being enforced, [that] is relevant in determining the applicability of the discretionary function exception."). Similarly, the discretionary function analysis in this case must examine the statutes, regulations and policies designed to guide the Coast Guard's enforcement of the Inland Navigation Rules.

Upon examination of the relevant authorities, this Court finds that the Coast Guard enjoyed discretion in enforcing the Inland Navigation Rules. First, 33 C.F.R. § 177.07 defines the lighting violations exhibited by the Secret Formula as an "unsafe condition." In conducting enforcement actions that deal with unsafe conditions, 46 U.S.C. § 4308 states in pertinent part:

> If an official charged with the enforcement of this chapter observes a recreational vessel being operated . . . [in an] unsafe condition (as defined in regulations prescribed under this chapter) and, ***in the judgment of the official***, the operation creates an

11

> especially hazardous condition *the official **may*** direct the individual in charge of the recreational vessel to take immediate and reasonable steps necessary for the safety of individuals on board the vessel, including directing the individual in charge to return to a mooring and to remain there until the situation creating the hazard is corrected or ended.

46 U.S.C. § 4308 (emphasis added).

Plaintiffs assert that Section 4308 made the Secret Formula's lighting violation a *de facto* "especially hazardous condition," and thereby forced the Coast Guard to either terminate the Secret Formula's trip, or to bring the Secret Formula into strict compliance with the Inland Navigation Rules. To the contrary, the statute expressly reserved decision on the existence of an especially hazardous condition to the "judgment" of Heyob, the Boarding Officer, and Plaintiffs do not point to any evidence that Heyob's judgment led him to find that such a condition existed. Even if there were such evidence, Section 4308 did not require Heyob to terminate the Secret Formula's trip. Termination was only one of several possible remedies that Heyob *may* have imposed if his *judgment* led him to conclude that an especially hazardous condition existed. Likewise, nothing in Section 4308 required Heyob to bring the Secret Formula into strict compliance.

This discretion is further reinforced by Section 4308's companion regulation, which reads:

> **Action to correct an especially hazardous condition**.
> An operator of a boat . . . shall follow the direction of the Coast Guard Boarding Officer, which ***may*** include direction to:
>
>> (a) Correct the especially hazardous condition immediately;
>>
>> (b) Proceed to a mooring, dock, or anchorage; or
>>
>> (c) Suspend further use of the boat until the especially hazardous condition is corrected.

33 C.F.R. § 177.05 (emphasis added). Discretion in dealing with the lighting violation is reinforced yet again in the BOJAK manual, which states:

12

> **Termination**:
> The Vessel's voyage MAY be terminated, if:
> - Unsafe condition(s) creates an especially hazardous condition; and
> - The condition(s) cannot be corrected on the spot . . . .

(Doc. 89-2 at 12) (emphasis in the original). In short, nothing in the relevant statutes and regulations required Heyob to terminate the Secret Formula's trip or bring the vessel into strict compliance. This is true even if Heyob found the existence of an especially hazardous condition, which he did not.[4]

Plaintiffs argue that even if Heyob was not required to terminate the trip or bring the Secret Formula into strict compliance, Heyob did not have the authority to authorize the 360-degree all-round white light. Plaintiffs contend that such a remedy–even if temporary–may not have met the minimum visibility and luminescence standards required by the Inland Navigation Rules. Plaintiffs also allege that the remedy may have caused the 360-degree light to shine in Steinle's eyes, creating a dangerous violation of the Rules' requirement to maintain a proper lookout. Plaintiffs argument fails, however, to point to any statute, policy, or regulation specifically mandating the manner by which Heyob remedied the lighting violation. *See Rosebush*, 119 F.3d at 442 (citing *Autrey v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993)) ("It is the governing administrative policy, not the Forest Service's knowledge of danger, that determines whether certain conduct is mandatory for purposes of the discretionary function exception . . . . The relevant inquiry is whether the controlling statutes, regulations and administrative policies

---

[4] Plaintiffs rely on *Cassens*, *supra*, for the proposition that the Coast Guard must bring a vessel into strict compliance whenever it observes a safety violation. Plaintiffs fail to discern, however, that *Cassens* involved mandatory regulations specifically requiring that the safety inspector in that case certify a vessel only if it strictly complied with the rules. *See* 44 F.3d at 510. This case does not involve any such requirements.

13

mandated that the Forest Service maintain its campsites and fire pits in any *specific* manner.'") (emphasis in the original).

Similarly, Plaintiffs fail to point to any authority that required the Coast Guard to ensure that Steinle complied with Heyob's instructions for displaying the 360-degree light at all times after the Coast Guard's boarding. Nor do they point to any authority requiring Heyob to instruct Steinle on the Rules' safe speed requirements, or to ensure that the Secret Formula maintained a safe speed at all times after the boarding. Indeed, the Inland Navigation Rules place the onus for compliance on a vessel's operator, while the Coast Guard retains discretion in how it enforces the Rules. *See* 33 U.S.C. § 2002 ("Nothing in these Rules shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these Rules . . . ."); *accord* 33 C.F.R. § 83.02; *see also Varig Airlines*, 467 U.S. at 816-17, 817 n.13 (internal citations omitted) (the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator, while the FAA retains the responsibility for policing compliance . . . . This premise finds ample support in the statute and regulations [which place the onus for compliance on the aircraft owner.]").

In sum, nothing in the relevant statutes, regulations, or policies imposed specific requirements on how the Coast Guard enforced the Inland Navigation Rules against the violations presented by the Secret Formula. To the contrary, the Coast Guard enjoyed discretion sufficient to satisfy the first prong of the discretionary function exception.

This analysis is not altered by Plaintiffs' argument that the Coast was required to exercise "due care" during its encounter with the Secret Formula. Even assuming, *arguendo*, that the Coast Guard did not exercise due care, Plaintiffs' argument for the insertion of a "due care" standard is inapposite. First, Plaintiffs erroneously rely on "due care" language contained in the first clause of

28 U.S.C. § 2680(a). The Supreme Court has held, however, that the discretionary function exception is contained in the *second clause* of Section 2680(a), not the first. *See Varig Airlines* 467 U.S. at 808 ("The discretionary function exception [is] embodied in the second clause of § 2680(a) . . . .").

Second, Plaintiffs rely on *Indian Towing v. United States*, 350 U.S. 61 (1955), and *Dupree v. United States*, 247 F.2d 819 (3d Cir. 1957), for the proposition that once the Government makes a discretionary decision to engage in a rescue or enforcement operation, it is required to exercise due care under the Good Samaritan Doctrine. *See* Restatement (Second) of Torts § 324A. The Sixth Circuit's ruling in *Myslakowski*, *supra*, is instructive on this issue. The *Myslakowski* decision suggests that a discretionary decision imposes a due care requirement only when the decision leaves no room for further discretion. *See* 806 F.2d at 98 ("[H]aving exercised the discretion to issue navigational charts . . . [e]roneously locating navigational hazards on [the] charts . . . involves no discretionary function or duty."). Conversely, upon deciding to board the Secret Formula, the Coast Guard enjoyed significant discretion in how it dealt with the vessel's lighting violations, even if, *arguendo*, it did not exercise due care. To hold otherwise would disregard the statutes and regulations that expressly provide for discretion after the Coast Guard boards a vessel.

Third, relying on due care analyses contained in *Cassens*, *supra*, and in *Good v. Ohio Edison*, 149 F.3d 413 (6th Cir. 1998), Plaintiffs seem to suggest that the Good Samaritan Doctrine's due care requirements enable their suit to move forward notwithstanding the applicability of the discretionary function exception. Plaintiffs misconstrue *Cassens* and *Good*, as well as the roles of the Good Samaritan Doctrine and discretionary function exception. As explained by the Sixth Circuit in *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994), pleading facts to justify the

15

Coast Guard's liability under the Good Samaritan Doctrine is a prerequisite to invoking the Government's waiver of sovereign immunity. *Id*. at 899. Once the waiver is invoked, however, a district court can still be deprived of subject matter jurisdiction if there is an applicable exception to the waiver; e.g., the discretionary function exception. *Id*. Thus, even if the Coast Guard failed to satisfy the Good Samaritan Doctrine's due care requirements, such facts are only sufficient to invoke the Government's initial waiver of sovereign immunity. Such facts are not sufficient, however, to obviate the effects of the discretionary function exception. The *Good* and *Cassens* decisions do not suggest otherwise.[5]

**2. Second Prong: Whether the Discretionary Conduct is Shielded by the Exception**

Having determined that the Coast Guard had discretion in how to enforce the Inland Navigation Rules, "the second part of the *Gaubert* test looks to see whether the [Coast Guard's] conduct is 'of the kind that the discretionary function exception was designed to shield.'" *Rosebush*, 119 F.3d at 441 (quoting *Gaubert*, 499 U.S. at 322-23). In making this determination, courts look to see whether the conduct at issue "touches on public policy considerations." *Lawson*, 1997 U.S. App. LEXIS 23227, at *6.

---

[5] This Court notes that the Sixth Circuit admonished in *Myers*, *supra*, that "focusing solely on the applicability of the discretionary function exception . . . [is akin to] 'putting the cart before the horse,'" because unless it is determined that a plaintiff pled facts sufficient to invoke the Government's original waiver of jurisdiction under the SAA or FTCA, the discretionary function exception need not be applied. 17 F.3d at 898. In this case, as in *Cassens*, however, the parties only briefed the discretionary function exception issue. *See Cassens*, 44 F.3d 510 n.2 ("[T]he applicability of the SAA to [the plaintiff's] claims was neither briefed nor argued by the parties, who focused solely on the applicability of the discretionary function exception. Because we find that the district court correctly dismissed the case for want of jurisdiction under the discretionary function exception, we need not address this alternative basis for finding a lack of jurisdiction.").

Plaintiffs first point to Heyob's deposition as proof that no policy considerations were involved:

**Q:** Was there some Coast Guard public policy that favored letting him go?

**A:** No, Sir.

**Q:** Was there some social or economic policy reason that you were considering?

**A:** I was considering the fact that I wasn't there to–let me rephrase that. I would say no.

**Q:** No policy consideration?

**A:** There's no policy or anything.

(Doc. 152-1 at 120:8-16). Heyob's statement, however, is not dispositive of the second prong. "[T]he requirement for a policy nexus is an objective not a subjective one." *Rosebush*, 119 F.3d at 444. Thus, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see also Rosebush*, 119 F.3d at 444 ("The proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis."); *Myslakowski*, 806 F.2d at 97 ("[I]t is, in part, to provide immunity against liability for the consequences of negligent failure to consider the relevant, even critical, matters in discretionary decision making that the statutory exception exists.").

In the instant matter, the Coast Guard's decisions on how best to enforce the Inland Navigation Rules were objectively susceptible to policy analysis. As explained by the Government,

17

> [i]n this case, the inquiry regards what level of oversight of recreational vessels the Coast Guard should maintain . . . . The Coast Guard's responsibility is merely to oversee and inspect for compliance. In doing so, a Boarding Officer must balance considerations of safety and economics given the Coast Guard's limited resources and widely varied responsibilities.

(Doc. 89 at 11-12).

Plaintiffs cite *Bultema v. United States*, 359 F.3d 379 (6th Cir. 2003), to argue that the Coast Guard's conduct cannot satisfy *Gaubert*'s second prong. In that case, Bultema, a federal prison inmate, was issued a bottom-bunk pass for medical reasons. *Id*. at 381. When the pass was issued, prison policy required that Bultema be given a duplicate copy, and be instructed to inform the prison unit management of his bottom-bunk privileges. *Id*. No such copy and no such instructions were provided, however, and Bultema never received a bottom bunk. *Id*. Eventually Bultema fell from his top bunk, injuring himself. *Id*.

The Sixth Circuit found that even if the issuer's failure to give Bultema the appropriate copy and instruction was a discretionary decision under *Gaubert*'s first prong, such a decision could not satisfy *Gaubert*'s second prong.

> Where a particular government action is a deliberate or necessary result of a discretionary general policy, such that a tort suit based on the particular act or omission would amount to a challenge to the protected across-the-board policy, then the discretionary function applies . . . .

*Id*. at 383. In *Bultema*, however, "[t]he allegedly negligent act or omission [was] not a necessary concomitant of the prison's notification policy, but rather [was] allegedly in contravention with, or at least not required by, that policy." *Id*. at 384. Similarly, in this case Plaintiffs argue that Heyob's decision to sanction the 360-degree "all-round" white masthead light as a temporary solution was violative of the policies in the Inland Navigation Rules, and therefore is not the sort of decision designed to be protected by the discretionary function exception. Plaintiffs' argument is

18

not persuasive. As explained above, the statutes, regulations, and policies relevant to the instant matter are those that guide the Coast Guard's enforcement of the Inland Navigation Rules. As such, it cannot be said Heyob's discretionary decision to sanction the 360-degree light was an unnecessary result of the discretion conferred on him by the relevant authorities described, *supra*. Rather, Heyob's decision was objectively susceptible to the above-described policy considerations, and therefore satisfied the second prong of *Gaubert*.

**V. Conclusion**

For the reasons stated herein, the Government's motion to dismiss is granted, (Doc. 89), the Government's motion to strike is granted, (Doc. 162), Plaintiff Ashley Franklin's request for leave to file a revised Supplemental Authority List is denied, (Doc. 163), and Plaintiffs' requests for oral argument are denied. (Doc. 159; Doc. 160).

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE